Case 15-1935, USA v. Farid Fata Oral argument not to exceed 15 minutes per side Mr. LaRené for the appellant I know, it's a temptation. You may proceed. Thank you. Good morning, Judge Bonds, Judge Kaffel, and Judge Stafford. D-L. LaRené for Farid Fata. I reserve three minutes for rebuttal. Excuse me. I want to start off by talking about the issue related to the victim-impact statements and the victim testimony. I acknowledge this is a difficult argument in light of Judge Borman's statement that he didn't find it necessary to rely or consider the victim-impact statements in deciding to impose a 45-verse sentence on Dr. Fata. I have known Judge Borman for a long time. We're sort of contemporaries, although you wouldn't know it to look at us, Doctor. But that's the further evidence of the benefits of living a virtuous life. I believe that Judge Borman, I've always known Judge Borman to be a fair-minded man and a careful man and a thoughtful man and, of course, an honest man. But I just have to say, having read this stuff, I think that in this case, Judge Borman could not have been untouched on some level by this material and that Judge Borman was kidding himself, I suppose is what I have to say, by saying, I'm sure you believe me, Mother Booker. No person could have failed to have been touched, to be moved by the 638 pages of law in motion that we've attached, that we've filed. I wonder, though, I mean, even if we take your argument at face value, I mean, there were 553 confirmed victims. Is that accurate? Yes. I mean, so, I guess, even if you're right about the punitive inability to disregard some of this stuff, isn't it harmless, given that we didn't have 500 people testify and presumably, you know, you could have put some other folks in there who we still knew would have been just as harmful? There are different kinds of victimhood and different kinds of harms. The harms that were associated, for example, in the government's presentation, even for its medical experts, the kind of harms, the risks, I think was the phrase the government used, that are associated with the unnecessary administration of these drugs are relatively anodyne. The documents and the testimony talks about things like numbness, taking, I mean, really, the idea that we're going to make a holding based on the idea that taking chemotherapy unnecessarily is anodyne, that's a bit of a scratch, isn't it? Well, it's, what the victim impact statements and testimony did was they went beyond the medical facts into life-changing kind of events. People became homeless, not just pain and suffering, but careers were handed to them. If it was, in fact, a harm that could be fairly laid at Dr. Fanta's door, and there is reason to believe that in many of these cases, these harms could not be properly laid at his door. And it seems to me that the due process guarantee that you will be sentenced on the basis of accurate information required Judge Mormon to give us a chance to fairly test these claims of victimhood. This is some of the most horrifying stuff imaginable, and it's one thing to say, well, no one wants to take unnecessary chemotherapy, that's certainly a bad thing. It's another to live out the horrors of these folks' lives, and when very likely, especially in the case, for example, of the solid tumor patients, Dr. Fanta was not the cause of that suffering. He pleaded guilty to how many violations? I believe there were 17 health care fraud counts, one or two kickback counts, and two counts of money laundering. And in the, in the, in the colloquy at the plea taking, were you there? No, my partner handled that. Did, did the government not identify 553 victims? We, we, it was stipulated. And was there any objection to that, that the government was, you know, doing a little puffing, running up the number or anything like that? There were a few. How about the plea, plea colloquy? I'm not sure that the number of victims was part of the plea colloquy, but in the course of the entire process, we stipulated to 553 victims. And the people that you're objecting to having their victim impact statements used, they were outside of the 553?  And what, what can you say in a short compass as to statements that were admitted that were, in effect, outside the universe of what some of the 553 could have testified to? That's kind of the question. Is it simply cumulated that you had, you know, some who weren't in the 553 who testified to the same kind of thing? Or what was it that was uniquely horrifying about the ones that you say you would like to have attacked? Well, attacked is maybe too strong a word. I don't like your mind. These life changing prejudices, these claims of needless deaths, these claims of lives turned upside down by, in cases that may not necessarily be true. So are you saying that there were not or would not have been comparable examples of life changing testimony from those among the 553? I would have to speculate, Judge. The point here is what we're talking about is the difference between dying in prison and having some sort of chance to have a life, a sentence that gives the defendant some kind of reasonable possibility of a life after prison. I mean, that's the tipping point here. It's not that Dr. Fata was asking for probation. He proposed a 25-year prison term. He was 50 years old when he was sentenced. And that kind of decision, that kind of tipping point decision, does he die in prison or does he not, seems to be particularly the sort of decision that can be influenced at some level, even subconsciously, by this parade of horrors that was not otherwise offered by the government. But district court judges hear all the time things that are terribly prejudicial. And they do so not only in instances where a jury outside the room is going to make a call, you know, because they all have legal motions and so on. And the system trusts the ability of district judges to make their decisions without being influenced by those improper matters. And why shouldn't we do the same? I understand that perfectly. And I – that's the difficulty. This is that one-in-a-million case. Just like Bruton presents an outlier situation where a jury can't be – although we presume jurors to follow – that they will follow their instructions, this is an outlier. This is a case in which it's just not reasonable to expect a jury to follow those instructions. This, too, is an outlier case where, you know, as hard as he tried, I don't think that the conscientious and fair-minded district judge could not have been affected somehow. Okay. So, I mean, really then the basis of your argument is this is just extraordinarily prejudicial, more so than Paul Horne has probably seen before. I think so. I don't know. I mean, you know, I mean, you get a lot of cases. And, I mean, this is despicable stuff, but I've seen worse, you know, than I think Paul Horne has probably seen before. I'm glad to say I haven't. The government, I think, would sort of agree with me in its sentencing memorandum called Dr. Foster the most egregious fraudster in the history of the nation. Well, you know, I mean, okay. But it's the government, Judge. I know, but that doesn't say much about what Paul Horne did. I understand. Well, I understand. And I understand perfectly. Is your client backing down from what he admitted in the May a couple of that he gave to the district court? He is. If the plea policy goes like I understand it, you stand there and the United States attorney reads off the factual basis and the district judge says, is what the government said true? If not, tell me what is what? And that went down, did it not? He has not backed down at all. Okay. And when it came time for the sentencing, he told the district judge, like about the far part of you, like you and I are now, that what he did was just horrible. It was terrible. He ruined lives and everything like that. Yes, sir. But when the district judge, you say, read some statements from people who were not in that 553 victims, that was a mistake. And heard their testimony? And heard their statements? Yes. And that was not outside, that was not ex parte or anything, was it? Well, it was not ex parte, but there is no confrontation, right? There is no questioning of the victims. They speak and not subject to the kind of questioning that a witness would ordinarily face. Of all of the either written statements or the oral, how many were inside the 553 and how many were outside? I am afraid, Judge, I cannot. Well, I can file something, but I can't. I don't have the record. I don't have the record as well as I should. All right. Anything else? Well, I was going to turn to the guideline argument, but with 27 seconds left, I think I'll sit down and shut up. Thank you. Mr. Getz. May it please the Court, Andrew Getz for the United States. The core question here is whether this Court trusts the district judge who stated unequivocally on the record at sentencing that he was not founding the defendant's sentence on any of the statements given by the patients at the sentencing hearing or in writing. This Court's well-settled precedent and, most importantly, the facts of this case establish that the answer here should be yes. If the Court looks at the case law in similar circumstances, there's approximately three different considerations that courts typically look at when reviewing issues of this kind. Did the judge recognize his or her obligation under the law? Second, did the judge clearly state what he or she was doing? And third, was the ruling afterwards consistent with what the judge stated? Here, all of those factors point in favor of what Judge Vorman did. And I'll start with the last one first. If the Court looks at the reasons that Judge Vorman gave for pronouncing the sentence starting at page 2499, he walked through what his reasons were for giving this 45-year sentence, and he focused on the guilty pleas, what this defendant pleaded guilty to in open court. He pleaded guilty to three specific instances at the plea hearing of prescribing chemotherapy to people who didn't need it. He pleaded guilty to prescribing rituximab, a very harmful monotonal antibody, when given in excess. And Judge Vorman walked through each of those counts, each of the defendant's admissions, at the plea hearing and stated that those were his primary basis for imposing sentence here. The Court also mentioned the testimony of the government's two experts. This was a five-day sentencing hearing. Two of those days were from the government's experts, Dr. Longo and Dr. Steensma. Dr. Steensma's testimony walked through 100 patients, 100 files that he reviewed, and found approximately 3,000 instances where somebody had been given chemotherapy who didn't need it. 3,000 doses of chemotherapy, if you include the unnecessary Velcain, the unnecessary Vidaz, and Dapagen. Judge Vorman emphasized that. The sentence here was also in the middle of the properly calculated guideline range, 360 months to life. This isn't an above-guideline sentence. It's not a below-guideline sentence. If this were a substantive reasonableness challenge, this sentence would be presumed reasonable. So Judge Vorman not only stated what he wasn't relying on. He said in the middle of the range, the range was 30 years to life. 30 years to life, middle. The middle would mean, if you think it's 30 to 60, so his life would be 110. I'm approximating a little bit. Judge Boggs, I'm making some assumptions. It is above the bottom of the range. It is above the bottom of the range. It is above the bottom of the range. But Mr. Loren is right that it's very likely he's going to die in prison. That's correct, Your Honor. Statistically, you'd have to go to 90 or so. About 90. About 90. Good. Now, Judge Boggs, I think you asked, and Judge Patzold, you may have asked as well, how many of these victim statements came from people who were in the 553. I don't know the answer to that, but what I do know is that of the victims and the counts of conviction, and there were 13 counts of health care fraud, Judge Stafford answered your question. 13 counts of health care fraud. Of those, all but one of those victims gave an oral or written statement at sentencing. So the judge had statements from 12 people whom the defense can't contest at all. These were people that he pleaded guilty in open court to giving unnecessary treatments to. There's reference in the brief to a victim spreadsheet sealed Appendix 3, 10 to 13. Would that be a place we could look to for this answer? Yes, in part, Judge Boggs. That would allow the court to confirm what I just said about comparing the victims in that spreadsheet as well as the victims in the spreadsheet at Appendix 314, which is the oral statements. The court could compare those victims with the victims in the counts of conviction and confirm what I just said. The victims in the 553 aren't specifically listed anywhere. They were part of a stipulation. I'm not even sure that number is listed in the stipulation. But the stipulation is at pages 382 through 384 of the appendix. And that stipulation basically has a loss amount calculation. That loss amount calculation was based on review of the files. It included things where the experts had concluded somebody had been mistreated, the defendant had conceded somebody had been mistreated, the patient had been provided some sort of treatment for which there was no possible legitimate justification for it. So that's where the 553 comes from. The court's not going to see a whole list of those. But those, I mean, even if the court were to disbelieve Judge Morgan, and the law doesn't support that, but even if the court were to do that, he would have to show not prejudice from all the statements. He would have to show that the marginal difference between the legitimate statements and all of the statements, that that somehow prejudiced him and influenced the sentence in getting where it was. And he can't do that. You can only read so many of these statements from the confirmed victims before realizing that they would support any sentence, including a life sentence here. So he would have to show more prejudice than he acknowledges. He'd have to show that marginal difference. And he simply can't do that. But this court shouldn't even go that far. It should trust that Judge Borman met what he said when he stated on the record at sentencing that he was not going to found a sentence on any of those statements. And this actually, this isn't that unusual. There's a Federal Rule of Criminal Procedure, 32I3B, that actually provides for this precise circumstance at sentencing. It states that where there's a factual dispute, the judge either has to resolve that dispute or do what the judge did here, state that he's not going to consider it or it will not affect the sentence. So what Judge Borman did here was not only appropriate, it's precisely what the Federal Rules of Criminal Procedure provide. It's telling, too, that the defense keeps citing Bruton as their best example. He cited it today in oral argument, he cited it in his brief, and they cited it on the record below because Bruton actually supports the government's argument here. This court held in Rogers v. McMacken that the Bruton Rule does not apply to bench trials. We do not presume that judges, district judges, are as incapable of not relying on a non-testifying defendant's confession, co-defendant's confession, as we presume juries are. So the Bruton line of cases actually supports the government's argument here, not the defendant's. I'm happy to answer any further questions that the court may have on this subject or any of the others. There are none. We've just asked that the district court's judgment be affirmed. Mr. Moran, you have your remaining time. What you were talking about with Mr. Gatz kind of illustrates the point I was trying, however perfectly, to make. There are harms and there are harms. If you look at pages 1 through 4 of our reply brief, this kind of illustrates the point. There were two indictment patients referred to as R.S. and J.M. Dr. Fata admitted in the course of the plea that he had administered medically unnecessary chemotherapy drugs to these folks. Yet their claims – and I'm not faulting these people. They lived through a terrible experience and they're the victims. There's no question about they're the victims. However sincerely they express themselves, their expressions are tainted, perhaps, and should be tested. It should have been examined. For example, R.S. R.S. was the person identified in Count 8. R.S., in his statements to the investigators, reported and the government reported that as a result of the admittedly unnecessary drugs, he lost all the teeth in his mouth. Now that's something that gets your attention. That takes the case into a gut-wrenching level, to me at least. What a horrible thing. Well, it turns out we were able to look at the medical records of some of the victims. And without minimizing their victimhood, we were able to put it in some cases, but didn't have the time to do it with all of them, to put the actual harm they suffered in perspective. With R.S., for example, it turned out that the loss of his teeth had nothing to do with the chemotherapy drugs, but rather it was a result of a lifelong history, a documented lifelong history of poor oral hygiene. Well, yeah, okay. But, I mean, certainly Judge Borman doesn't want to have a pending trial on whether this drug, which apparently does weaken the jawbone, right? It has that potential. Whether it's a coincidence that this happens, you know, after a lifetime of bad hygiene or something, or whether it's the hygiene. He doesn't have to have a mini-trial on that. But I think he should have the facts. We should at least be given the opportunity to present the facts, if there are counter-dating facts, and then let him decide. For example, correct me if I'm wrong, I think you said that taking this particular person, you did present some counter-dating facts, which would put the judge on notice that he shouldn't take all of these at face value. He doesn't want to have a mini-trial, but he lets you put in enough to indicate that these are potentially questionable. If you wade deeply enough into the 638 pages, I think you'll agree that you just get to a point where it's so overwhelming, it's almost impossible to draw those kinds of fine distinctions. That's my take. That's what we have to do.  Thank you very much. Thank you. Thank you. The case will be submitted.